# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| STEVEN MICHAEL TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:13-cv-01344 |
| v. ) | |
| ) | Judge Trauger |
| CAROLYN W. COLVIN, ) | Magistrate Judge Newbern |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the court is Plaintiff Steven Michael Taylor's Motion for Judgment on the Administrative Record ("Motion") (Docket No. 11), filed with a Memorandum in Support (Docket No. 12). Defendant Commissioner of Social Security ("Commissioner") filed a Response in Opposition to Plaintiff's Motion. (Docket No. 17.) Upon consideration of the parties' filings and the transcript of the administrative record (Docket No. 9),[1] and for the reasons given herein, the court will grant Plaintiff's Motion (Docket No. 11) to the extent that the case is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for consideration under the appropriate burden of proof and in consideration of any new evidence.

### I. Introduction

Taylor filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act on June 15, 2010 and Supplemental Security Income ("SSI") under Title

---
[1] Referenced hereinafter by page number(s) following the abbreviation "Tr."

1

XVI of the Act on June 25, 2010, alleging a disability onset of June 15, 2010, due to seizures. (Tr. 177.) Taylor's claim was denied at the initial and reconsideration stages of state agency review. Taylor subsequently requested *de novo* review of his case by an Administrative Law Judge ("ALJ"). The ALJ heard the case on June 22, 2012, when Taylor appeared with counsel and gave testimony. (Tr. 63–85.) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the matter was taken under advisement until August 22, 2012, when the ALJ issued a written decision finding Taylor not disabled. (Tr. 20–30.) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

2. The claimant has not engaged in substantial gainful activity since June 15, 2012, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: osteoarthritis of the shoulder, osteoarthritis of the hips, degenerative disc disease, epilepsy/seizure disorder, status post-remote brain injury, and history of alcohol abuse (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, … that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) except that he can occasionally lift, push/pull, or carry up to 50 pounds; sit, stand, and/or walk for up to six hours each; should avoid all hazards due to his seizure disorder; can understand and carry out simple instructions; can maintain concentration, persistence, and pace for simple tasks for two hours at a time; can interact appropriately with others; and can adapt to infrequent changes.

6. The claimant is capable of performing past relevant work as a packer. This does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from June 15, 2010, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g).

(Tr. 22–25, 29–30.)

On October 10, 2013, the Appeals Council denied Taylor's request for review of the ALJ's decision (Tr. 1–2), thereby rendering that decision the final decision of the SSA. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g).

## II. Review of the Record

The following summary of the medical record is taken from the ALJ's decision:

> [T]reatment records from Logan Memorial Hospital document the onset of the claimant's seizure disorder in October 2006. Ex. B12F, p.1. The claimant testified that this condition originated in 1971, when he suffered a brain injury (which required surgery) in an automobile accident, but that his seizures did not materialize until 2006.
>
> In July 2010, the claimant's neurologist, Dr. Walter Warren, issued a letter concerning the claimant's seizure disorder. Dr. Warren stated that he began seeing the claimant in 2006, after his first seizures. Ex. B1F, p. 1. Dr. Warren stated that EEGs performed in 2006 and 2008 were normal, but that an MRI confirmed a left frontal craniotomy and front lobe scarring from the claimant's 1971 accident. *Id.* Pertaining to the instant case, Dr. Warren indicated that the claimant's dosage of Dilantin, his anti-seizure medication, had been fairly steady; he stated that some dosage levels had been therapeutic while others had not. *Id.* Dr. Warren stated that he had received phone calls from the claimant's wife, who made subjective reports of irrational and temperamental behavior on the claimant's part. *Id.* Dr. Warren stated that he had not actually seen the claimant since July 2008, but he has tried to refill the claimant's medications while maintaining a record of the claimant's medical history by phone. Ex. B1F, p. 2. *See also* Ex. B16F.
>
> Subsequent treatment notes from Logan Memorial document the claimant's complaints in March 2011 of moderate back and hip pain following a motor vehicle accident. Ex. B14F, pp. 1–6. Lumbar spine x-rays revealed mild-to-moderate degenerative disc disease, and hip x-rays revealed no acute abnormalities but possible joint effusion. *Id.* No addition [sic] abnormalities were

3

indicated. *Id.* In June 2011, the claimant presented to Logan Memorial with complaints of having a seizure. Ex. B15F, pp. 1–3. Treatment records note the claimant's non-compliance with his anti-seizure medication as well as his continued alcohol use; the claimant was advised to take his medication as prescribed and to avoid alcohol use. *Id.*

Two months later, in August 2011, the claimant presented to Nashville General Hospital with complaints of bilateral shoulder pain that intermittently radiated down the claimant's arm. Ex. B11F, p. 1. Abnormal x-rays revealed the presence of bilateral osteoarthritis of the shoulders, characterized by stiffness and pain. *Id.* The following month, September 2011, the claimant reported pain of 4/10 at one appointment and 5/10 at another. Ex. B11F, pp. 8, 10. In October 2011, the claimant reported pain of 3/10 and stated that he had not been taking his Dilantin because he could not afford it; at the same time, a physical therapy plan was developed, whereby the claimant would attend four physical therapy sessions, once every other week. Ex. B11F, pp. 12, 18. The claimant was again instructed to abstain from consuming alcohol. Ex. B11F, p. 19. The claimant's physical therapy notes indicate that he generally tolerated treatment well; his shoulder strength increased to 4/5 on the left and 4+/5 on the right, which [sic] pain of only 2/10. Ex. B11F, pp. 20–22. In mid-November 2011, the claimant reported zero pain; however, non-compliance with medication and continuing alcohol use were again noted, and the claimant was advised accordingly. Ex. B11F, p. 26. In mid-December 2011, the claimant reported that he had decreased the amount of beer he was drinking; he was instructed to abstain completely from alcohol and to practice perfect compliance with his prescribed treatment. Ex. B11F, p. 28. In late December 2011, the claimant reported some shoulder improvement following his physical therapy sessions. Ex. B11F, pp. 30–31. A physical exam revealed somewhat reduced forward flexion of the left shoulder, rotator cuff strength of 4+/5 on the left and 5/5 on the right, no creitus, and only mild tenderness around the AC joint. *Id.* The claimant was given an injection for shoulder pain, and he was advised to return for more physical therapy. *Id.* At a follow-up for his shoulder in February 2012, the claimant reported an increase in his range of motion and a decrease in his pain level. Ex. B19F, pp. 1–3. An exam confirmed that his range of motion had increased, and his shoulder was no longer tender to palpation. *Id.* In mid-March 2012, the claimant reported that he was still drinking a case or two of beer per week, contrary to his doctors' long-standing instructions to abstain from alcohol consumption. Ex. B19F, p. 5. In late March

4

2012, the claimant complained of shoulder and hip pain. Ex. B19F, pp. 8–9. On exam, the claimant exhibited full and symmetrical range of motion of the shoulder bilaterally, full rotator cuff strength bilaterally, no crepitus, and some tenderness to palpation. *Id.* Concerning his hips, there were no range of motion issues, no tenderness, and no masses. *Id.* The claimant's left shoulder was noted to be improving, and his hip pain complaints were assessed as "subjective discomfort." *Id.* On May 8, 2012, and EMG and nerve conduction study revealed only "mild" and "minimal" abnormalities, with no evidence of radiculopathy or plexopathy. Ex. B19F, p. 10. The next day, claimant complained of 5/10 right hip pain, plus right shoulder pain; he reported that he was still drinking, though he had reduced his alcohol intake. Ex. B19F, p. 14. In late May 2012, abnormal imaging revealed osteoarthritis of the left hip. Ex. B19F, pp. 17–18.

Dr. Lloyd Huang performed a consultative physical examination of the claimant. Dr. Huang noted the claimant to have normal range of motion of the cervical spine, shoulders, elbows, wrists, hips, knees, and ankles, with somewhat reduced range of motion of the lumbar spine. Ex. B2F, p. 2. The claimant also had normal grip strength, full motor strength, normal gait, and negative straight leg raise testing. *Id.* Dr. Huang stated that he was unable to determine whether the claimant's alcohol use played a role in his seizure disorder, but he stated that, regardless, the claimant's "functional status may improve with abstinence from alcohol." Ex. B2f, p. 3.

Senior Psychological Examiner Robert Doran, M.A., performed a consultative psychological evaluation of the claimant. Mr. Doran observed that the claimant walked, stood, and sat comfortably without apparent difficulty. Ex. B3F, p. 1. He also noted that the claimant's speech was "slightly slurred" but "[o]therwise his speech was clear and of moderate volume." *Id.* As noted above, the claimant reported that he performs considerable activities of daily living. Ex. B3F, p. 2. The claimant also stated that he likes to go fishing. Ex. B3F, p. 2. Concerning the mental status of the exam portion of the claimant's evaluation, Mr. Doran noted the claimant's mood to be "mildly" dysphoric with congruent affect. Ex. B3F, p. 3. The claimant reported no hallucinations and no suicidal or homicidal ideation. *Id.* He was noted to have fair insight and intact impulse control. *Id.* Cognitively, the claimant was aware of current events, performed serial seven subtractions, and calculated multiplication and division problems. *Id.* However, Mr. Doran stated, "It is my impression that [the claimant] did not put forth his best efforts during the mental status portion of this

5

evaluation." *Id.* Mr. Doran determined that the claimant functions, "at a minimum," in the low average range. *Id.*

[T]here are no treatment records of record from the claimant's treating mental health care provider, Dr. Pradumna Singh.

(Tr. 25–27.)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether substantial evidence supports that agency's findings and whether it applied the correct legal standards. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means "'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the agency's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 473 (6th Cir. 2016 (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Accordingly, this court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir.

2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Where, however, an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." *Miller*, 811 F.3d at 833 (quoting *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014)).

### B. The Five-Step Inquiry

The claimant bears the ultimate burden of establishing entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). The SSA considers a claimant's case under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

1. A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. A claimant who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart B of the Regulations. Claimants with lesser impairments proceed to step four.

4. A claimant who can perform work that he has done in the past will not be found to be disabled.

> 5. If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden through step four of proving the existence and severity of the limitations her impairments cause and the fact that she cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functioning capacity[.]" *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 628 (6th Cir. 2016) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

The SSA can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. *See Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010); *Wright v. Massanari*, 321 F.3d 611, 615–16 (6th Cir. 2003). Otherwise, the grids only function as a guide to the disability determination. *Wright*, 321 F.3d at 615–16; *see Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's prima facie case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert testimony. *Anderson*, 406 F. App'x at 35; *see Wright*, 321 F.3d at 616 (quoting SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity ("RFC") at steps four and five, the SSA must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

### C. Plaintiff's Statement of Errors

Taylor first argues that the ALJ erred in failing to give controlling weight to the opinions of his treating specialist, Dr. Pradumna Singh. He specifically takes issue with the ALJ's finding that "there are no treatment records of record from the claimant's treating mental health care provider, Dr. Pradumna Singh." (Docket No. 12, p. 2.) The Government concedes that there were in fact treatment notes from Dr. Singh in the record, but contends that this error was harmless since the ALJ found that the opinion was unsupported by the record and the ALJ did actually review Dr. Singh's records because she cites to exhibits B11F and B19F, which contain a majority of Dr. Singh's treatment records. (Docket No. 17, p. 6.)

The administrative regulations implementing the Social Security Act impose standards on the weighing of medical source evidence. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). The significant deference accorded to the Commissioner's decision is conditioned on the ALJ's adherence to these governing standards. In *Gentry v. Commissioner of Social Security*, the Sixth Circuit re-stated the responsibilities of the ALJ in assessing medical evidence in the record in light of the treating source rule:

> Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings. 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1512(b); 20 C.F.R. § 404.1513. The second is known as the "treating physician rule,"

9

> *see Rogers*, 486 F.3d at 242, requiring the ALJ to give controlling weight to a treating physician's opinion as to the nature and severity of the claimant's condition as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2) (language moved to 20 C.F.R. § 404.1527(c)(2) on March 26, 2012). The premise of the rule is that treating physicians have the best detailed and longitudinal perspective on a claimant's condition and impairments and this perspective "cannot be obtained from objective medical findings alone." 20 C.F.R. § 416.927(d)(2) (language moved to 20 C.F.R. § 416.927(c)(2) on March 26, 2012). Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Rogers*, 486 F.3d at 242. In all cases, the treating physician's opinion is entitled to great deference even if not controlling. *Id.* The failure to comply with the agency's rules warrants a remand unless it is harmless error. *See Wilson*, 378 F.3d at 545–46.

741 F.3d 708, 723 (6th Cir. 2014).

The Sixth Circuit has also made clear that an ALJ may not determine the RFC by failing to address portions of the relevant medical record, or by selectively parsing that record—*i.e.*, "cherry-picking" it—to avoid analyzing all the relevant evidence. *Id.* at 724 (citing *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports.")). This is particularly so when the evidence ignored is from a treating physician. Ignoring medical evidence from a treating source in fashioning the RFC, without a proper analysis of why such action is taken, cannot be harmless error because it "undermines [the ALJ's] decision" to overlook evidence that could have potentially supported a more restrictive RFC or even a finding of disability. *Gentry*, 741 F.3d at

10

729 (citations omitted); *Grubbs v. Comm'r of Soc. Sec.*, No. 12–14621, 2014 WL 1304716, at *2 (E.D. Mich. Mar. 31, 2014) ("The absence of a review of treatment records from a treating source and the lack of analysis of such made it impossible for the ALJ to properly assess whether the Plaintiff was disabled and/or whether Plaintiff had the residual functional capacity to do any work.").

It is uncontested that Dr. Singh is Taylor's treating mental health care physician and therefore subject to the treating physician rule. It is further uncontested that the ALJ was incorrect when she stated in her summary of the objective medical evidence that there were no treatment records of record from Dr. Singh. The ALJ also stated that no objective evidence was provided to support Dr. Singh's opinion. (Tr. 29.) This is simply not true. There were at least seven treatment records, spanning from September of 2011 to August 2012, which document a substantial part of Dr. Singh's relationship with Taylor. While the ALJ may have cited to exhibits which contain Dr. Singh's treatment records, Dr. Singh's actual name does not appear once in that summary; therefore, there is no way for the court to determine whether the ALJ actually attributed those records to Dr. Singh.

While exhibits B11F and B19F do contain all of the treatment records from Dr. Singh, the ALJ's one paragraph analysis of those exhibits fails to even mention the word "seizure," "neurologist," or "Dr. Singh" a single time. Therefore, there is no way for the court to determine whether the ALJ actually attributed those records to Dr. Singh. Indeed, the paragraph focuses on Taylor's shoulders, hips, and lack of compliance regarding his seizure medication but never discusses Dr. Singh's treatment records for Taylor's seizures. Significantly, the VE testified that the restrictions noted by Dr. Singh in his Medical Assessment would preclude all work. (Tr. 81.)

Furthermore, the ALJ accorded "little weight" to Dr. Singh's opinion that, among other things, Taylor has "poor or no ability to function independently or maintain attention/concentration." (Tr. 29.) The ALJ stated that she gave Dr. Singh's opinion less weight because

> no objective evidence [was] provided to support such limitations. Moreover, the claimant's considerable activities of daily living undermine Dr. Singh's opinion as to claimant's independent functioning, and the claimant exhibited his ability to pay attention and concentrate at his psychological evaluation, during which he correctly performed multiple types of mathematical equations, for example. He also reported that he enjoys watching TV, including watching football games and watching golf, which requires a reasonable amount of concentration. *See* Ex. B3E, p. 5.

(*Id.*) It thus appears that the ALJ reduced the weight of Dr. Singh's opinion, at least in part, on the inaccurate basis that there were no treatment records provided. Further, the ALJ erred by failing to apply the other factors—such as the length of the treatment relationship, the frequency of the examination, and the extent of the source's knowledge of the impairments—to determine the appropriate weight to give Dr. Singh's opinion. *See Wilson*, 378 F.3d at 544. This violated the treating physician rule.

As the Sixth Circuit has repeatedly stated, where there is a violation of the treating source rule or the good reasons requirement, without harmless error, the matter must be remanded. *Id.* at 545–46. This is true even when the conclusion of the ALJ may be otherwise justified based on a review of the record. *Gentry*, 741 F.3d at 729 (citations omitted). The ALJ's error here cannot be said to be harmless because it overlooked evidence that could have potentially supported a

more restrictive RFC or even a finding of disability. *Id.* Accordingly, the matter here must be remanded.²

## IV. Conclusion

For the reasons stated above, Plaintiff's Motion for Judgment on the Record (Docket No. 11) will be granted to the extent the case will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for consideration under the appropriate burden of proof and in consideration of any new evidence. Notes

_____
ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE

---

² Notably, the Appeals Council did not address the ALJ's misstatement regarding Dr. Singh's treatment records. This issue could and should have been easily resolved by the Appeals Council at a much earlier stage of the case.